UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAN MCKEON, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CENTRAL VALLEY COMMUNITY SPORTS FOUNDATION and JEFF BLAIR,<br><br>　　　　Defendants. | Case No. 1:18-cv-0358-BAM<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT<br><br>(Doc. No. 60.) |

Currently before the Court is Plaintiffs Megan McKeon and Tina Neal, individually and as guardian ad litem of her daughter Laila Neal's (collectively "Plaintiffs") motion for leave to file a third amended complaint. (Doc. No. 60.) The Court deemed this matter suitable for decision without oral argument pursuant to Local Rule 230(g). Having considered the moving, opposition, and reply papers, and the record in this matter, the Court denies the motion.

**I.　BACKGROUND**

Plaintiffs' operative complaint alleges that Megan McKeon is a "physically disabled" individual who at all times uses a wheelchair or arm braces for mobility due to a severe burn she sustained as a child. (Doc. No. 47 at ¶ 6). On June 26, 2016, Plaintiff Megan McKeon visited Gateway Ice Center, an ice-skating rink owned by Central Valley Community Sports Foundation ("CVCSF") and managed by Jeff Blair (collectively "Defendants"). (*Id.* at ¶ 13.) On the day of

McKeon's visit, Defendants' employees told Plaintiff McKeon that she would not be able to use her wheelchair on the ice during the general skating session. (*Id.*)

On January 6, 2017, Plaintiff Tina Neal was told by one of Defendants' employees that her daughter, Laila Neal, would not be allowed to be on the ice in her wheelchair. (Doc. No. 47 at ¶ 14.) On January 8, 2017, not wanting her daughter to miss a birthday party, Plaintiffs Tina and Laila Neal went to Defendants' ice rink and were prohibited from participating in ice-skating activities. (*Id.*)

On March 13, 2018, Plaintiffs filed a complaint against Defendants alleging that they implemented a discriminatory policy in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12182(a), and its California equivalent, the Unruh Act, Cal. Civ. Code § 51. (Doc. No. 1). On June 13, 2018, Plaintiffs filed a first amended complaint pursuant to a stipulation of the parties. (Doc. Nos. 15-17.) On December 7, 2018, the Court issued an order granting in part and denying in part Plaintiffs' motion for leave to file a second amended complaint. (Doc. No. 45.) Pursuant to the Court's order, Plaintiffs were granted leave to add a cause of action for violation of Section 504 of the Rehabilitation Act but were denied leave, without prejudice, to name Fresno Skating Center, Inc. and Terrance J. Cox as defendants or to add causes of action for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress. (*Id.*)

Plaintiffs filed the instant motion for leave to file a third amended complaint on March 29, 2019, seeking to add Central Valley NMTC Fund, LLC (the "Fund") as a defendant to their claim for violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (Doc. No. 60.) On April 19, 2019, Defendants filed an opposition to the motion accompanied by declarations from Terrance J. Cox and Keith M. White. (Doc. Nos. 61-63.) Plaintiffs replied on April 26, 2019. (Doc. No. 64.)[1]

## II. DISCUSSION

---

[1] Plaintiffs additionally filed written objections to the declarations of Messrs. Cox and White. (Doc. No. 64-1.) The Court declines to address Plaintiffs' objections as neither declaration was considered in ruling on the motion. *See Manriquez v. Huchins,* 2012 WL 5866482, at *7 (E.D. Cal. Nov. 19, 2012).

2

Federal Rule of Civil Procedure 15(a) provides, in relevant part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." The Ninth Circuit has instructed that the policy favoring amendments "is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citations omitted). But amendments "seeking to add claims are to be granted more freely than amendments adding parties." *Union Pac. R.R. Co. v. Nevada Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991). The factors commonly used to determine the propriety of a motion for leave to amend are (1) whether there have been prior amendments, (2) undue delay, (3) bad faith, (4) futility of amendment, and (5) prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Loehr v. Ventura County Cmty. Coll. Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984). These factors are not of equal weight; prejudice has long been held to be the most crucial factor in determining whether to grant leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight").

### A. Prior Amendments

The Court's discretion to deny an amendment is "particularly broad" where a pleading has been amended previously. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.1990); *Fidelity Fin. Corp. v. Fed. Home Loan Bank*, 79 F.3d 1432, 1438 (9th Cir.1986); *Calderon v. Tulare Reg'l Med. Ctr.,* 2018 WL 4473626, at *3 (E.D. Cal. Sept. 17, 2018). Here, Plaintiffs have amended their complaint on two previous occasions. (*See* Doc. Nos. 17, 47.)

### B. Undue Delay

"Undue delay is 'delay that prejudices the nonmoving party or imposes unwarranted burdens up on the court.'" *Calderon,* 2018 WL 4473636, at *3 (citing *San Diego Comic Convention v. Dan Farr Prods.*, 2017 WL 3269202, at *5 (S.D. Cal. Aug. 1, 2017)). The passage of time is not, in and of itself, undue delay, instead the relevant inquiry is "[w]here the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied." *Jordan v.*

*Cnty. of L.A.*, 669 F.2d 1311, 1324 (9th Cir. 1982) *vacated on other grounds*, *Cnty. of L.A. v. Jordan*, 459 U.S. 810 (1982).

Defendants do not argue that Plaintiffs unduly delayed in seeking amendment, and the declaration of Plaintiffs' counsel in support of the motion indicates that Plaintiffs promptly sought leave to amend after receiving relevant discovery from Defendants and the Fund. (Doc. No. 60-2.) Accordingly, this factor does not weigh against amendment.

### C. Futility of Amendment

It is well-established that the Court may deny leave to amend if amendment would be futile. *Serra v. Lapin*, 600 F.3d 1191, 1200 (9th Cir. 2010); *Gardner v. Martino*, 563 F.3d 981, 990–92 (9th Cir. 2009); *Deveraturda v. Globe Aviation Security Services*, 454 F.3d 1043, 1046 (9th Cir. 2006); *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). Futility is a measure of the amendment's legal sufficiency. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment ... that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).[2] Thus, the test of futility is identical to the one applied when considering challenges under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Baker v. Pac. Far E. Lines, Inc.*, 451 F.Supp. 84, 89 (N.D. Cal. 1978); *see Saul v. United States*, 928 F.2d 829, 843 (9th Cir.1991) ("A district court does not err in denying leave to amend ... where the amended complaint would be subject to dismissal." (citation omitted)).

Here, Plaintiffs seek to add the Fund as a new defendant to their claim for violation of Section 504 of the Rehabilitation Act of 1976. Section 504 prohibits discrimination on the basis of a disability "under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). To state a claim, a plaintiff must show (1) he or she is an 'individual with a disability'; (2) he or she is 'otherwise qualified' to receive the benefit; (3) he or she was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial

---

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) rejected the "no set of facts" test for motions to dismiss for failure to state a claim. However, even after *Twombly* and *Iqbal*, the Ninth Circuit has continued to apply the "no set of facts" test to motions for leave to amend. *See, e.g., Missouri ex rel. Koster v. Harris,* 847 F.3d 646, 656 (9th Cir. 2017).

4

assistance." *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.1997) (emphasis, footnote, and citations omitted).

Plaintiffs allege that the Fund is a Community Development Entity that provided federal financial assistance to Defendants, and that funding was ultimately used for administrative salaries and benefits. (Doc. No. 60-2 at Ex. B, ¶¶ 11, 17.) According to Plaintiffs, the Fund was aware that Defendants had a discriminatory policy in place because the Fund's managing member and/or President is also a director, officer, and co-founder of Defendant CVCSF. (*Id.*) Plaintiffs argue that the Fund is liable for violation of Section 504 of the Rehabilitation Act because the funding that the Fund provided to Defendants "went directly to the salary of the person who was responsible for creating and implementing the discriminatory policy" which resulted in Plaintiffs' exclusion from participating in ice-skating activities. (*Id.* at ¶¶18, 34-35.) In opposition, Defendants argue that amendment would be futile because the proposed third amended complaint does not allege that the Fund engaged in any culpable conduct and merely providing funding to an entity that discriminates does not violate Section 504 of the Rehabilitation Act. (Doc. No. 61 at 6-7.)

The Court finds that Plaintiffs' proposed amended complaint fails to plead a plausible claim against the Fund. Plaintiffs do not allege that they were denied the benefits of any "program or activity" operated by the Fund as a result of their disabilities as is required to state a claim under Section 504. *See Lovell v. Chandler,* 303 F.3d 1039, 1051 (9th Cir. 2002) ("The term 'program or activity' in section 504 . . . only covers all the activities of the [entity] receiving federal funds."); *see also* 29 U.S.C. § 794(b)(3)(A) (defining "program or activity" as the operations of an entity); *Sharer v. Oregon*, 581 F.3d 1176, 1178 (9th Cir. 2009) ("[W]e interpret 'program or activity' to place meaningful constraints on section 504's scope."). Instead, Plaintiffs' proposed third amended complaint alleges that the Fund is a separate entity from Defendants and that it was Defendants, not the Fund, who operated the ice-skating program at issue, instituted the allegedly discriminatory policy, and engaged in the purported discriminatory conduct of prohibiting Plaintiffs from enjoying the benefits of the ice-skating program. (*See* Doc. No. 60-2 at Ex. B, ¶¶ 9-11, 14-15.) Plaintiffs do not allege any facts indicating that the Fund was involved in or responsible for the operations of

the allegedly discriminatory ice-skating program, can be held vicariously liable for Defendants' acts, or directly engaged in any discriminatory conduct.

To state a claim under the Rehabilitation Act, Plaintiffs must allege that the Fund itself excluded a qualified individual with a disability from participating in or benefitting from a program or activity receiving Federal financial assistance or that there are facts giving rise to another theory to hold the Fund liable for the acts of third parties. *See* 29 U.S.C. § 794(a). The Fund cannot be held liable for the alleged discriminatory conduct of a separate entity and its employees solely because it facilitated federal funding that was used to pay administrative salaries and benefits and shared a principal with Defendant CVCSF. *See Dunlap v. Ass'n of Bay Area Governments,* 996 F.Supp. 962, 968 (N.D. Cal. 1998) ("[E]ntities that indirectly "benefit" from federal aid, or that are "inextricably intertwined" with actual recipients, are not on that basis covered" by the Rehabilitation Act.) (citing *United States Department of Transportation v. Paralyzed Veterans of America,* 477 U.S. 597, 607–10 (1986)); *Nodleman v. Aero Mexico,* 528 F.Supp.475, 489 (C.D. Cal. 1981) (reasoning that Section 504 does not impose a duty on entities to ensure that other entities do not discriminate against handicapped persons); *United States v. City of Charlotte, N.C.*, 904 F. Supp. 482, 487 (W.D.N.C. 1995) ("Case law has established that a claim under Section 504 will be stated only where the allegedly discriminatory "program or activity" was conducted by an entity which received or dispersed federal funding. . . . There must be a sufficient nexus between the federal funds and the discriminatory practice."); *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908-09 (9th Cir. 2013) ("[A]pplication of § 504 to all who benefit economically from federal assistance would yield almost 'limitless coverage.'") (citations omitted). As pled, the allegations of the proposed third amended complaint are therefore insufficient to state a claim under Section 504 of the Rehabilitation Act against the Fund and amendment would be futile.

Defendants further contend that amendment is futile because the Fund neither received nor provided federal funding to Defendants. (Doc. No. 61 at 7-8.) As was previously explained to Defendants in the Court's December 7, 2018 order granting in part and denying in part Plaintiffs' motion for leave to file a second amended complaint, Defendants' disagreement over the factual

basis of the Fund's receipt of federal funds is not a reason to deny leave to amend. Discovery is the procedure for determining whether an entity received federal funding. When addressing futility, the Court assumes the truth of the sufficiently plead allegations in the complaint, which counsel have made subject to their obligations under Federal Rule of Civil Procedure 11.

### C. Bad Faith

In the context of a motion to amend under Rule 15, "bad faith" generally refers to efforts to amend the pleadings late in the litigation in order to obtain an unfair tactical advantage. *E.g. Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995) (finding that bad faith was shown where petitioner sought leave to amend late in the litigation after suffering an adverse ruling); *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (amendment disallowed where the delay in amendment was a tactical choice brought specifically to avoid the possibility of an adverse summary judgment ruling). Bad faith may be found where the addition of new legal theories are baseless and presented for the purpose of prolonging the litigation or made with a wrongful motive. *Lanier v. Fresno Unified Sch. Dist.*, 2013 WL 1896183, at *2 (E.D. Cal. May 6, 2013). The test for maliciousness is a subjective one and requires the Court to "determine . . . the good faith of the applicant." *Koenig v. Bank of America, N.A.,* 2014 WL 6981358. At *5 (citing *Kinney v. Plymouth Rock Squab Co.,* 236 U.S. 43, 46 (1915); *Wright v. Newsome,* 795 F.2d 964, 968, n. 2 (11th Cir. 1986)).

Contrary to Defendant's arguments in the opposition,[3] it does not appear that the motion was brought in bad faith. There is nothing to suggest that Plaintiffs sought to add the Fund to gain a tactical advantage or to advance any other improper motive. While, for the reasons discussed above, the Court finds that amendment would be futile, there is no indication that Plaintiffs advanced baseless legal theories in order to prolong or delay litigation. Accordingly, the Court finds that bad faith is not a ground to deny leave to amend.

---

[3] In arguing that the motion was brought in bad faith, Defendants also argue that the motion violates Rule 11 of the Federal Rules of Civil Procedure. As Defendants have not filed a motion for sanctions and the Court has not exercised its discretion to issue an order to show cause, the Court declines to address Defendants' Rule 11 argument. *See* Fed. R. Civ. P. 11(c)(2)-(3).

7

**E.     Prejudice to Defendant**

Undue prejudice to the opposing party is the most important factor in deciding whether leave to amend should be granted. *Eminence Capital, LLC*, 316 F.3d at 1052. "'Undue prejudice' means substantial prejudice or substantial negative effect." *SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1085 (S.D. Cal. 2002) (quoting *Morongo Band*, 893 F.2d 1074, 1079 (9th Cir. 1990)). The Ninth Circuit has found such "substantial prejudice where the claims sought to be added 'would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense.'" *Id.*

Here, Defendants argue that the Fund is unlikely to consent to Magistrate Judge jurisdiction and therefore granting leave to amend would be prejudicial to Defendants in light of the strained caseloads of District Judges in this District. (Doc. No. 61 at 10.) On reply, Plaintiffs argue that discovery has not yet occurred and, if the Fund declines to consent to Magistrate Judge jurisdiction, then "it and Defendants would be the parties to prejudice themselves, not the Plaintiffs." (Doc. No. 64 at 6-7.) As to Plaintiffs' latter argument, the Fund and Defendants are separate entities and the Court is concerned with the negative effect on Defendants, and not the Fund, in considering the potential prejudice of amendment. Moreover, whether it was Plaintiffs or a third party that ultimately created the circumstance which prejudice Defendants is not determinative.

Plaintiffs correctly note that prejudice is generally mitigated where the case is still in the discovery stage, no trial date is pending, and no pretrial conference has occurred. *See DCD Programs Ltd. v. Leighton*, 833 F.3d 183, 187-88 (9th Cir. 1987). However, fact discovery in this case is currently set to expire on June 28, 2019. (*See* Doc. No. 34.) The addition of a new party would therefore require the Court to adjust the schedule in this case and it is substantially uncertain that the integrity of the trial date could be maintained. (*See* Doc. No. 34.) Chief Judge Lawrence J. O'Neill is anticipated to retire in January of 2020, at which time District Judge Dale A. Drozd will be the sole active district judge in this Division. Due to the priority of criminal matters, as well as the fact that this is one of the busiest Courts in the nation, Judge Drozd will not be available to conduct a pre-trial conference or trial in this action. Therefore, as it is anticipated that the Fund will not consent to Magistrate Judge jurisdiction, not only would Defendants likely be deprived of

the existing trial date by the addition of a new party, but it would be substantially uncertain if and when the case would proceed to trial. The Court finds that this would be unduly prejudicial to Defendants, particularly in light of the futility of amendment, as it would create a "substantial negative effect" to Defendants by greatly altering the litigation and requiring them to undertake a new course of defense. *SAES*, 219 F.Supp.2d at 1086. This factor therefore weighs against amendment.

Thus, consideration of the five factors discussed above weighs against granting Plaintiffs leave to amend their complaint.

**III.   CONCLUSION and ORDER**

Based upon the foregoing, IT IS HEREBY ORDERED that Plaintiffs' motion for leave to file a third amended complaint (Doc. No. 60) is DENIED.

IT IS SO ORDERED.

Dated:   **May 6, 2019**              /s/ *Barbara A. McAuliffe*
                                                           UNITED STATES MAGISTRATE JUDGE