UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAN MCKEON; LAILA NELA, a minor by and through her guardian ad litem TINA NEAL; and TINA NEAL,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRAL VALLEY COMMUNITY SPORTS FOUNDATION, a non-profit corporation dba GATEWAY ICE CENTER; and JEFF BLAIR, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 1:18-cv-0358-BAM<br><br>ORDER GRANTING DEFENDANTS CENTRAL VALLEY COMMUNITY SPORTS FOUNDATION AND JEFF BLAIR'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>(Doc. 75) |

Currently before the Court is Defendants Central Valley Community Sports Foundation ("CVCSF") and Jeff Blair's (collectively "Defendants") motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] (Doc. 75.) Plaintiffs Megan McKeon, Laila Neal, a minor by and through her guardian ad litem, Tina Neal, and Tina Neal (collectively "Plaintiffs") filed their opposition on December 6, 2019. (Docs. 82-85.) Defendants filed a reply on December 13, 2019. (Doc. 86-88.)

The matter was heard before Magistrate Judge Barbara A. McAuliffe on December 20,

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. (Docs. 31, 32, 33.)

1

2019. Rachelle Golden appeared on behalf of Plaintiffs. Keith White appeared on behalf of Defendants. Having considered the record, the parties' briefing and arguments, and the relevant law, Defendants' motion for partial summary judgment will be granted.

## I. BACKGROUND

Plaintiffs' operative complaint alleges that Megan McKeon is a "physically disabled" individual who at all times uses a wheelchair or arm braces for mobility due to a severe burn she sustained as a child. (Doc. No. 47 at ¶ 6). On June 26, 2016, Plaintiff Megan McKeon visited Gateway Ice Center, an ice-skating rink owned by CVCSF and managed by Jeff Blair. (*Id.* at ¶ 13.) On the day of McKeon's visit, Defendants' employees told Plaintiff McKeon that she would not be able to use her wheelchair on the ice during the general skating session. (*Id.*)

Plaintiffs' complaint further alleges that Laila Neal is a "physically disabled" individual who solely uses a wheelchair due to Cerebral Palsy. She relies upon her mother and Plaintiff Tina Neal to assist her for mobility. (Doc. 47 at ¶ 7.) On January 6, 2017, Plaintiff Tina Neal was told by one of Defendants' employees that her daughter, Laila Neal, would not be allowed to be on the ice in her wheelchair. (*Id.* at ¶ 14.) On January 8, 2017, not wanting her daughter to miss a birthday party, Plaintiffs Tina and Laila Neal went to Defendants' ice rink and were prohibited from participating in ice-skating activities. (*Id.*)

On March 13, 2018, Plaintiffs filed a complaint against Defendants alleging that they implemented a discriminatory policy in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12182(a), and its California equivalent, the Unruh Act, Cal. Civ. Code § 51. (Doc. No. 1). On June 13, 2018, Plaintiffs filed a first amended complaint pursuant to a stipulation of the parties. (Doc. Nos. 15-17.) On December 7, 2018, the Court issued an order granting in part and denying in part Plaintiffs' motion for leave to file a second amended complaint. (Doc. No. 45.) Pursuant to the Court's order, Plaintiffs were granted leave to add a cause of action for violation of Section 504 of the Rehabilitation Act against Defendants, but were denied leave, without prejudice, to name Fresno Skating Center, Inc. and Terrance J. Cox as defendants or to add causes of action for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress. (*Id.*)

On March 29, 2019, Plaintiffs filed a motion for leave to file a third amended complaint seeking to add Central Valley NMTC Fund, LLC (the "Fund") as a defendant to their claim for violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (Doc. No. 60.) The Court denied Plaintiffs' motion for leave to amend based on futility, determining that the Fund did not operate the ice-skating program at issue. The Court also determined that the Fund could not be held liable for the alleged discriminatory conduct of a separate entity. (Doc. No. 67.)

On November 15, 2019, Defendants filed the instant motion seeking partial summary judgment on Plaintiffs' Rehabilitation Act claim. Defendants contend that they are entitled to summary judgment as to this claim because neither CVCSF nor Blair received the requisite federal funding or federal financial assistance to support a Rehabilitation Act claim. (Doc. No. 76 at 2.)

Plaintiffs opposed the motion on December 6, 2019, arguing that Defendants received federal financial assistance by way of loans from the Fund and Clearinghouse CDFI, and that CVCSF is an affiliate of the Fund, which receives federal financial assistance, and is subject to compliance with federal non-discrimination statutes as part of its participation in the New Market Tax Credits program. (Doc. No. 82 at 2-4.)

Defendants replied on December 13, 2019, contending that Plaintiffs have cited no admissible evidence that either defendant received federal funds or financial assistance. (Doc. No. 86.)

On December 19, 2019, on the eve of the hearing, Plaintiffs filed, without explanation, a supplemental declaration in support of their opposition. (Doc. No. 89.) Defendants filed objections to the supplemental declaration on December 20, 2019. (Doc. No. 90.)

**II. LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a

reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.* Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 3 at 323. The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## III. OBJECTIONS

Defendants filed objections to certain evidence submitted by Plaintiffs in support of their opposition. In particular, Defendants object to the following: (1) the declaration of Sammy J. Franco and related exhibits (Doc. 82-1 and Exs. B, C, D); (2) exhibits F, G and H, attached to the declaration of Rachelle Golden (Doc. 84 and Exs. F, G and H); and (3) the supplemental declaration of Sammy J. Franco and its attached exhibit (Doc. 89 and Ex. I).

<u>Declaration of Sammy J. Franco</u>

Defendants object to those portions of Mr. Franco's declaration concerning the formation of CVCSF, paragraphs 2-4, which appear to relate to the alleged fabrication of minutes for the election of officers. These portions of Mr. Franco's declaration and associated exhibits are not relevant to the issue currently before the Court; that is, whether CVCSF received federal financial assistance. Accordingly, Defendants' objection on the ground of relevance is SUSTAINED. Fed. R. Evid. 401 (evidence is relevant if it has any tendency to make a fact more or less probable and the fact is of consequence in determining the action). Exhibit B also is hearsay, offered for the truth of the matter asserted. Defendants' objection on the ground of hearsay is SUSTAINED. Fed. R. Evid. 801.

As to the additional exhibits attached to the declaration, which relate to bank transactions, including checks written from the Fund to Clearinghouse CDFI and CVCSF, the Court finds that these exhibits are hearsay, to which no exception to the rule has been offered. The Court also finds that evidence of the transfer of funds from various accounts is not relevant to the issue before the Court. Neither Mr. Franco's declaration nor the existence of these transactions

provides evidence regarding the federal nature of any funding. Accordingly, Defendants' objections to the exhibits are SUSTAINED on the grounds of hearsay and relevance. Fed. R. Evid. 401, 802. The Court has not relied on Mr. Franco's declaration or the supporting exhibits in deciding the instant motion.

<u>Exhibits F, G and H to Declaration of Rachelle Golden</u>

In support of their opposition, Plaintiffs submitted the following exhibits: (1) Exhibit E, excerpts of the deposition of Terrance Cox, (2) Exhibit F, which is comprised of the 2010, 2012 and 2017 Allocation Agreements of Central Valley NMTC Fund, LLC for the New Market Tax Credits Program; (3) Exhibit G, which are the statements of Information for TFS Investments, LLC; and (4) Exhibit H, which is information from ClearinghouseCDFI.com regarding its participation in the New Market Tax Credits Program. (Doc. No. 84, Exs. F, G and H to Declaration of Rachelle Golden.) Defendants have objected to Exhibits F, G and H on the grounds of relevance, hearsay and lack of foundation. (Doc. No. 88.)

The exhibits attached to Ms. Golden's declaration consist of over 160 pages. Plaintiffs' opposition refers to the exhibits collectively and does not pinpoint or specify which portions of the evidence relates to any particular point. In other words, the entirety of all exhibits is used to support Plaintiffs' claims of disputed facts. (See e.g., Doc. 83, Response to Separate Statement, Facts 1-5, citing Exhibits E-H.) The opposing party must direct the court's attention to specific, triable facts by "citing to particular parts of materials in the record." Fed.R.Civ.P 56(c)(1)(A); see *Christian Legal Soc. Chapter of Univ. of Calif. v. Wu*, 626 F3d 483, 488 (9th Cir. 2010) (the court need not search the record for buried supporting evidence and may disregard factual statements in briefs not supported by specific reference to the record). Plaintiff did not refer the Court to specific evidence, and therefore, the Court does not consider evidence which was not specifically referenced to dispute Defendants' undisputed facts.

Nonetheless, the Court has reviewed and considered the Allocation Agreements of Exhibit F and the information from ClearinghouseCDFI.com regarding the New Market Tax Credits Program of Exhibit H. These documents are relevant to the matter before the Court, and Defendants discuss the Allocation Agreements in their reply supporting the motion for summary

6

judgment. (Doc. 86 at 4.) Defendants' objections are therefore OVERRULED.

As to information regarding TFS Investments, LLC, Exhibit G, this information is not relevant to the source of funding at issue. Accordingly, Defendants' objection on the ground of relevance is SUSTAINED. Fed. R. Evid. 401.

<u>Supplemental Declaration of Sammy J. Franco</u>

As indicated above, on the eve of the hearing, Plaintiffs submitted the supplemental declaration of Mr. Franco, which includes one exhibit purporting to be a check from the Department of Treasury to CVCSF in care of the Fund in the amount of $20,135.55. (Doc. No. 89 and Ex. I.) Defendants have objected to this exhibit on the grounds of relevance, prejudice, hearsay, lack of personal knowledge, lack of foundation and lack of authentication. (Doc. No. 90.) As discussed at the hearing, the Court finds that the exhibit constitutes hearsay and there is no foundation or other information to identify the purpose or meaning of the document, including the reason for the payment, which Defendants suggested was related to a federal tax refund. For these reasons, Defendants' objections on the grounds of relevance, lack of personal knowledge, hearsay and lack of foundation are SUSTAINED. Fed. R. Evid. 401, 802, 403.

## IV. DISCUSSION

In the operative complaint, Plaintiffs assert that Defendants violated Section 504 of the Rehabilitation Act. Specifically, Plaintiffs allege that Defendants "received and used Federal funds for working capital and acquisition financing to maintain operations of the ice rink, for the benefit of the community at large, including Plaintiffs. Defendants received said Federal funds when they knew or should have known of the discriminatory policy it had against persons with disabilities on the date of Plaintiffs' visits." (Doc. 47 at ¶ 30.)

Section 504 prohibits discrimination on the basis of a disability "under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). To state a claim, "a plaintiff must show (1) he [or she] is an 'individual with a disability'; (2) he [or she] is 'otherwise qualified' to receive the benefit; (3) he [or she] was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.1997) (emphasis, footnote, and

citations omitted).

In this motion, the parties dispute whether Defendants received federal financial assistance for operation of the Gateway Ice Center. Plaintiffs raise two arguments that Defendants received "federal financial assistance" from either the Fund or Clearinghouse CDFI in the form of: (1) tax credits, and (2) a loan/revolving line of credit.

**A. Tax Credits**

According to the undisputed evidence, the Fund is a designated Community Development Entity ("CDE"), a specialized type of financial intermediary that assists in the distribution of federal New Market Tax Credits ("NMTC") under the Community Renewal Tax Relief Act of 2000. (Doc. 76 at 6; Doc. 63 at ¶ 11.) As a CDE, the Fund is allocated federal NMTC, and assigns those tax credits to private commercial lenders in exchange for the lender providing private loans to projects in financially distressed neighborhoods to promote economic development throughout Fresno and the Central Valley of California.[2] (Doc. 76 at 7; Doc. 63 at ¶ 13.) Similar to the Fund, the undisputed evidence also demonstrates that Clearinghouse CDFI is a CDE that participates in the NMTC program. (Doc. No. 82 at p. 3 ["Clearinghouse CDFI, also a Community Development Entity which receives New Market Tax Credits"]; Doc. No. 84-4, Ex. H to Declaration of Rachelle Golden).

No evidence was introduced that Defendants, CVCSF or Mr. Blair, received federal tax credits from the Fund or Clearinghouse CDFI. Although Plaintiffs attempt to raise a genuine dispute of material fact by suggesting that participation in the NMTC program indicates the receipt of federal financial assistance, there is no evidence to suggest that Defendants applied for or received tax credits in the first instance from either the Fund or Clearinghouse CDFI. (Doc. 87, Declaration of Terance Frazier ("Frazier Decl.") at ¶ 7.)

Indeed, even if CVCSF or Mr. Blair received tax credits from the Fund or Clearinghouse

---

[2] *See*, *e.g.*, *Confluence Advisors, Inc. v. Morgan, Keegan & Co., Inc.*, No. CV 05-1083-C-M3, 2006 WL 8433945, at *1 (M.D. La. Mar. 29, 2006) ("NMTC's are allocated to certain Community Development Entities (CDE's), and are aimed at encouraging equity investment in low income communities. Investors in CDE's receive a federal income tax credit equal to 39% of their investment over 7 years—basically, a dollar for dollar reduction in their federal income tax liability.")

8

CDFI, "courts have uniformly determined that tax credits do not constitute financial assistance." *West v. Palo Alto Hous. Corp.*, No. 17-CV-00238-LHK, 2019 WL 2549218, at *23–24 (N.D. Cal. June 20, 2019) (citing cases), appeal docketed, No. 19-16458 (9th Cir. July 24, 2019).; *see also Merrifield v. Beaven/Inter-American Companies, Inc.*, No. 89 C 8436, 1991 WL 171376, at *3 (N.D. Ill. Aug. 30, 1991) ("The term 'assistance' connotes transfer of government funds by way of subsidy, not merely exemption from taxation."). "[R]egulations implementing the Rehabilitation Act . . . define federal financial assistance to mean 'any grant, loan, contract' under which the government provides funds, services, or interests in or proceeds from real property. 45 C.F.R. § 84.3(h). The regulations do not identify tax credits or deductions under the definition of financial assistance." *West*, 2019 WL 2549218, at *24. Thus, even if Defendants applied for and received NMTC, such credits would not equate with Defendants receiving federal financial assistance within the meaning of the Rehabilitation Act.

**B. Loan/Revolving Line of Credit**

Plaintiffs' second argument is that Defendants received federal financial assistance through loans from the Fund and Clearinghouse CDFI. Plaintiffs attempt to raise a genuine dispute of material fact by indicating that Defendants, particularly CVCSF, were the beneficiaries of federal financial assistance by way of the loans, or in the case of the Fund, the line of credit that Defendants received.[3]

There is no evidence before the Court that the monies loaned or extended to CVCSF were, in fact, federal funds or that they constitute federal financial assistance. According to the evidence, the loan from the Fund was a standard loan evidenced by a Revolving Line of Credit, which was made from grant and revenue generated by the Fund. (Doc. 86 at 5; Doc. 87, Frazier

---

[3] There is no evidence Mr. Blair received any loans from either the Fund or Clearinghouse CDFI. Plaintiffs' argument is that Mr. Blair was paid a salary by CVCSF for his services at Gateway Ice Center and therefore received federal assistance. Plaintiffs have cited to no authority that receipt of a salary from a private employer qualifies as receiving financial assistance within the meaning of the Rehabilitation Act. *See*, *e.g.*, *Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971*, 60 F.3d 1375, 1384 (9th Cir. 1995) (Rejecting argument that all persons who receive the minimum wage from private employers, which were regulated by federal statute, would be deemed to be receiving such assistance, as would most if not all corporations and other businesses). Partial summary judgment will be granted to Mr. Blair.

Decl. at ¶ 5 and Ex. 1.). The Revolving Line of Credit does not mention and is not tied to any NMTC allocation to CVCSF. The undisputed evidence is the Fund does not receive or distribute any federal funds. (Doc. 78, Cox Decl. at ¶ 19.) The loan from Clearinghouse CDFI also was a standard business loan, evidenced and documented by a Business Loan Agreement, a Promissory Note describing the interest to be 7.750%, and a Deed of Trust. (Frazier Decl. at ¶ 6) These documents do not reference any federal program.

While the Fund and Clearinghouse CDFI may have been in a financial position, because of their participation in the NMTC Program, to extend loans to CVCSF, the transaction is not a sufficient nexus to impute liability to either defendant under the Rehabilitation Act. *See Dunlap v. Ass'n of Bay Area Governments,* 996 F.Supp. 962, 968 (N.D. Cal. 1998) ("[E]ntities that indirectly 'benefit' from federal aid, or that are 'inextricably intertwined' with actual recipients, are not on that basis covered" by the Rehabilitation Act.) (citing *United States Department of Transportation v. Paralyzed Veterans of America,* 477 U.S. 597, 607–10 (1986)); *United States v. City of Charlotte, N.C.*, 904 F. Supp. 482, 487 (W.D.N.C. 1995) ("Case law has established that a claim under Section 504 will be stated only where the allegedly discriminatory "program or activity" was conducted by an entity which received or dispersed federal funding. . . . There must be a sufficient nexus between the federal funds and the discriminatory practice."); *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908–09 (9th Cir. 2013) ("[A]pplication of § 504 to all who benefit economically from federal assistance would yield almost 'limitless coverage.'") (citations omitted).

Moreover, there is no evidence before the Court that the Fund or Clearinghouse CDFI received federal funds which were funneled through to Defendants or that the Fund or Clearinghouse CDFI received anything from the federal government other than an allocation of tax credits for the services the Fund and Clearinghouse CDFI provide.

As a final matter, Plaintiffs appear to suggest that CVCSF is an "affiliate" of the Fund under the implementing Federal Regulations, citing 12 C.F.R. § 1805.201. Plaintiff argues that because the Fund, pursuant to its Allocation Agreements must comply with federal non-discrimination statutes, so too must CVCSF. (Doc. 84, Ex. F to Declaration of Rachelle Golden.)

Pursuant to the Regulations, "Affiliate" means any company or entity that Controls, is Controlled by, or is under common Control with another company. 12 C.F.R. § 1805.104. Thus, to be an affiliate, CVCSF must be "controlled," by the Fund or Clearinghouse CDFI. The only evidence before the Court is a conclusory statement unsupported by any reference to the evidence, that Mr. Terrence Cox is the Treasurer of CVCSF and also "managed and controlled" the Fund. There is no argument or explanation why this fact makes CVCSF an affiliate of the Fund because of Mr. Cox's involvement in both entities under the Regulation.[4]

More to the point, and as stated above, there is no admissible evidence before the Court that the Fund received federal assistance, other than NMTC. Indeed, the Fund does not receive or distribute any federal funds. (Doc. 78, Cox Decl. at ¶ 19.) Plaintiffs' citation to various sections of the Code of Federal Regulations does not suggest facts which plausibly demonstrate that Defendants received federal financial assistance.[5]

Ultimately, Plaintiff has not presented substantial evidence from which a jury could conclude that Defendant CVCSF or Mr. Blair is a recipient of "federal financial assistance."

**III.     CONCLUSION and ORDER**

Based on the foregoing, Defendants' motion for partial summary judgment is GRANTED. IT IS SO ORDERED.

Dated: **December 27, 2019**          /s/ *Barbara A. McAuliffe*
                                                       UNITED STATES MAGISTRATE JUDGE

---

[4] The Regulation, in part, states: "Control or Controlling means: (1) Ownership, control, or power to vote 25 percent or more of the outstanding shares of any class of Voting Securities of any company, directly or indirectly or acting through one or more other persons; (2) Control in any manner over the election of a majority of the directors, trustees, or general partners (or individuals exercising similar functions) of any company; or (3) Power to exercise, directly or indirectly, a controlling influence over the management, credit or investment decisions, or policies of any company." 12 C.F.R. § 1805.104

[5] Plaintiff's citations to checks deposited in either the Fund or Clearinghouse CDFI, with transfers to CVCSF or Mr. Cox are irrelevant to the issue before the Court. (Doc. 82, p. 3-4.) The source of the checks is not federal financial assistance because there is no admissible evidence that either the Fund or Clearinghouse CDFI received federal financial assistance other than NMTC. Tax credits, such as NMTC, are not federal financial assistance under the Rehabilitation Act.